JOHN MICHEL, JR., ET AL. *v.* PLANNING AND ZONING
COMMISSION OF THE TOWN OF MONROE ET AL.
(10766)

DUPONT, C. J., FOTI and HEIMAN, Js.

Argued May 4—decision released July 21, 1992

*George J. Markley,* for the appellants (plaintiffs).
*Alice A. Carey,* with whom was *Edward P. McCreery III,* for the appellee (named defendant).

HEIMAN, J. The plaintiffs in this zoning dispute appeal from the trial court's judgment dismissing their appeal from the Monroe planning and zoning commission's decision granting the defendant McDonalds Corporation's application for a change of zone and for a special exception permit.[1] They claim that the trial

---

[1] The plaintiffs are John Michel, Jr., Helen M. Michel, Sr., Helen M. Michel and Michel Realty Limited. The defendants are the Monroe planning and zoning commission, McDonalds Corporation, George W. Ganim, Laurese Coury and Josephine Ganim. The plaintiffs have filed a joint brief with this court. The defendants Monroe planning and zoning commission, George W. Ganim, Laurese Coury and Josephine Ganim also have filed a joint brief. McDonalds Corporation, although a party to this appeal, has neither filed any papers with nor participated in oral argument before this court. Thus, whenever this opinion refers to an appellate position attributed to "the defendants," that argument should be understood as having been advanced in this court only by the Monroe planning and zoning commission, George W. Ganim, Laurese Coury and Josephine Ganim.

court improperly found that (1) the appeal was moot, (2) the zone change did not constitute spot zoning, (3) the commission did not impose an illegal condition on its decision granting the application, (4) the application was not fatally defective even though the named applicant, McDonalds Corporation, was not an owner of the property at the time the application was filed, (5) the commission's failure to hold separate votes on the requests for a zone change and for a special exception permit was not improper, (6) the building conditions and parking requirements imposed by the commission were not improper and (7) the commission's decision to grant the application was not improper, even though the commission held a public hearing on the application before it received the decision and report of the Monroe inland wetlands commission on a related application. We affirm the trial court's judgment.

The following facts are necessary to resolve this appeal. On May 3, 1990, McDonalds Corporation filed an application with the Monroe planning and zoning commission requesting a zone change for a four acre parcel and a special exception permit authorizing the construction of a McDonalds restaurant with a drive-through service window. On the date that the application was filed, the subject parcel, located at 390 and 400 Monroe Turnpike in Monroe, straddled two zoning districts: Design Business 1 (DB1) and Residential and Farming C (RC). The Monroe zoning regulations (regulations) permit certain restaurants that do not have drive-through windows to be built in DB1 districts. No restaurants are permitted in RC districts. Restaurants containing drive-through service windows are, however, permitted in Design Business 2 (DB2) districts. The regulations applicable to DB districts provide further: "Any new building to be constructed . . . shall be required to obtain a special exception per-

mit for business use prior to its use." Thus, in order to build a restaurant with a drive-through window, McDonalds sought a zone change redistricting the entire parcel as DB2 together with a request for a special exception permit.

The commission held a public hearing on the application on May 24, 1990. On June 29, 1990, the Monroe inland wetlands commission granted conditional wetlands approval for the parcel. After a single vote taken on July 5, 1990, the planning and zoning commission granted the application. The plaintiff abutting landowners appealed the commission's decision to the Superior Court; see General Statutes § 8-9; and the trial court dismissed the appeal, finding that the appeal was moot and, further, that each of the plaintiffs' claims was meritless. The plaintiffs petitioned this court for certification, which we granted on October 16, 1991. This appeal followed.

I

Plaintiffs claim that the trial court incorrectly determined that their appeal was moot. At oral argument before this court, the defendants agreed. Although the parties agree that the trial court improvidently dismissed the appeal as moot, we nonetheless must address the mootness issue because mootness implicates our jurisdiction. See *Furstein* v. *Hill*, 218 Conn. 610, 627, 590 A.2d 939 (1991). We agree with the parties. The appeal was not, and is not, moot.

The trial court found that the commission's adoption of a new zoning map in June, 1991, rendered moot the plaintiffs' challenge to the commission's July 5, 1990 vote granting McDonalds' requests for a change of zone and a special exception permit. Our Supreme Court's recent decision in *Protect Hamden/North Haven from Excessive Traffic & Pollution, Inc.* v. *Planning & Zoning Commission,* 220 Conn. 527, 600 A.2d 757 (1991),

which was published after the trial court rendered its judgment, controls our resolution of this issue. In *Protect Hamden/North Haven from Excessive Traffic & Pollution, Inc.* v. *Planning & Zoning Commission,* supra, the court recognized that General Statutes § 8-2h (a), which became effective on October 1, 1989, legislatively overruled *McCallum* v. *Inland Wetlands Commission,* 196 Conn. 218, 492 A.2d 508 (1985), and *Johnson* v. *Zoning Board of Appeals,* 2 Conn. App. 24, 475 A.2d 339, cert. denied, 194 Conn. 806, 482 A.2d 711 (1984), cert. denied, 471 U.S. 1066, 105 S. Ct. 2141, 85 L. Ed. 2d 498 (1985), which had determined that certain zoning appeals became moot by virtue of subsequent regulatory amendments. *Protect Hamden/North Haven from Excessive Traffic & Pollution, Inc.* v. *Planning & Zoning Commission,* supra, 540–41. The current rule in this state is that the validity of a planning and zoning commission's action is to be determined by reference to the zoning laws and regulations in effect at the time that the challenged action was taken. Id.; see General Statutes § 8-2h (a). Thus, a challenge to commission action no longer is rendered moot by a subsequent change in the applicable zoning laws or regulations. Id. The trial court incorrectly concluded otherwise.[2]

---

[2] Although our Supreme Court's decision in *Protect Hamden/North Haven from Excessive Traffic & Pollution, Inc.* v. *Planning & Zoning Commission,* 220 Conn. 527, 600 A.2d 757 (1991), was not announced until after the trial court decided the plaintiffs' appeal, we are not presented with an issue regarding the retroactivity of the court's holding in that case. As we noted above, it was not our Supreme Court's decision in *Protect Hamden/North Haven from Excessive Traffic & Pollution, Inc.* v. *Planning & Zoning Commission,* supra, but the legislature's action in enacting § 8-2h (a), which overruled *McCallum* v. *Inland Wetlands Commission,* 196 Conn. 218, 492 A.2d 508 (1985), and *Johnson* v. *Zoning Board of Appeals,* 2 Conn. App. 24, 475 A.2d 339 (1984). Because § 8-2h (a) became effective on October 1, 1989, before the trial court decided the plaintiffs' appeal, § 8-2h (a) controlled the trial court's analysis of the mootness issue.

## II

The plaintiffs next argue that the commission engaged in illegal spot zoning when it granted the change of zone. We disagree.

Our courts consistently have invalidated zoning decisions that have constituted spot zoning. " '[S]pot zoning is the "reclassification of a small area of land in such a manner as to disturb the tenor of the surrounding neighborhood." ' *Morningside Assn.* v. *Planning & Zoning Board,* [162 Conn. 154, 161, 292 A.2d 893 (1972)]. Two elements must be satisfied before spot zoning can be said to exist. First, the zone change must concern a small area of land. Second, the change must be out of harmony with the comprehensive plan for zoning adopted to serve the needs of the community as a whole. Id. The comprehensive plan is to be found in the scheme of the zoning regulations themselves. *First Hartford Realty Corporation* v. *Plan & Zoning Commission,* 165 Conn. 533, 542, 338 A.2d 490 (1973)." *Blaker* v. *Planning & Zoning Commission,* 212 Conn. 471, 483, 562 A.2d 1093 (1989).

Our review of the minutes of the commission's July 5, 1990 meeting discloses that the vote to approve McDonalds' application for a zone change and a special exception permit was based in part on the following finding: "[T]he rezoning does not constitute a 'spot zone' as the Plan of Development specifies that the subject area be a business zone without limitation or specification as to the specific zone designation. The subject site is principally zoned business as well as adjoining sites for substantial distances and areas to the north, south and west. The rezoning represents no dramatic change in the already intended use of the site." The commission further announced: "[A]ll aspects and features of the proposal . . . are necessary for the wel-

fare and convenience of the townspeople and will provide for the growth of appropriate business and retail establishments in town. The use will fill a significant need in the community and will be a desirable addition to the town of Monroe both in terms of goods and services to the community and as a reasonable addition to the tax structure."

The plaintiffs rely heavily on the fact that, under the Monroe zoning regulations, a drive-through window is permitted in a DB2 district but is not permitted in a DB1 district. This, they contend, leads ineluctably to the conclusion that the zone change from DB1 to DB2 is repugnant to the town's comprehensive zoning plan.[3] We, however, afford the commission's determination of whether a change comports with the town's comprehensive zoning plan substantial deference. *Dooley* v. *Town Planning & Zoning Commission,* 154 Conn. 470, 478, 226 A.2d 509 (1967). Here, the commission rezoned the subject parcel from one variety of design business district to another. The practical effect of the change in zone was simply to permit a McDonalds restaurant with a drive-through window in lieu of a McDonalds restaurant without a drive-through window. The commission did not engage in spot zoning when it granted McDonalds' application for a change of zone because it reasonably concluded that this incremental change in the permitted use of the property was not repugnant to Monroe's comprehensive zoning plan.

This claim is without merit.

### III

The plaintiffs next claim that the commission improperly required that a sidewalk be installed along one border of the subject parcel as a condition to the change of zone. We disagree.

---

[3] The defendants do not dispute that the zone change involved a small area of land.

The minutes of the commission's July 5, 1990 meeting disclose that the commission approved McDonalds' application subject to a number of conditions, including the construction of a sidewalk along the roadway adjacent to the subject parcel. The plaintiffs claim that this condition violated General Statutes § 8-2, which requires that zoning regulations be uniform throughout all districts in the same class. They contend that because the Monroe zoning regulations do not provide for the installation of sidewalks in DB2 zones generally, the condition was unique to the DB2 zone at issue in this case. As such, the plaintiffs posit, the condition violates the uniformity requirement of § 8-2.

Our review of the record indicates that the installation of the sidewalk was a condition that the commission imposed on its granting of the special exception permit, not its granting of the zone change. McDonalds submitted a single uniform land use application to the commission seeking a "Design District Zone Change/ Special Exception Permit." Section 8-2 explicitly provides that zoning commissions may, despite the uniformity requirement, provide that certain classes or kinds of structures may be built only after special exception permits are issued. It further provides that commissions may issue special exception permits "subject to standards set forth in the regulations *and to conditions necessary to protect the public health, safety, convenience and property values.*" (Emphasis added.) Section 117-1100 (A) of the Monroe zoning regulations provides in pertinent part that "[a] DB District shall be established and/or a DB use shall be permitted only in an area where the uses meet the conditions for a special exception permit, as provided in Sections 117-1801 and 117-1802 of these regulations." Section 117-1801 (A) of the regulations provides in pertinent part that "[t]he Town Planning & Zoning Commission may approve a special exception permit, which may be subject to

appropriate conditions and safeguards specified in its action of approval, to permit the establishment of the uses specified elsewhere in these regulations as being permitted by special exception . . . ." The commission acted well within its considerable discretion in determining that the construction of a sidewalk was "appropriate"; see Monroe zoning regulations § 117-1801; and "necessary to protect the public health, safety, convenience and property values." See General Statutes § 8-2.

The plaintiffs argue that only a single vote was taken on McDonalds' application for a zone change/special exception permit, and, thus, the condition necessarily applied to the granting of the change of zone. It is the appellants' burden, however, to present us with a record that is adequate to review their claim. *Barra* v. *Ridgefield Card & Gift Gallery, Ltd.,* 194 Conn. 400, 407, 480 A.2d 552 (1984). Just as we will not presume that a trial court acted illegally; see *Rosenblit* v. *Danaher,* 206 Conn. 125, 134, 537 A.2d 145 (1988); *Barra* v. *Ridgefield Card & Gift Gallery, Ltd.,* supra; *Daly* v. *DelPonte,* 27 Conn. App. 495, 507, 608 A.2d 93 (1992); we will not presume, when faced with this ambiguous record, that the commission improperly imposed the condition incident to its granting of the zone change. See *Cahill* v. *Board of Education,* 198 Conn. 229, 242, 502 A.2d 410 (1985); *Imbrogno* v. *Stamford Hospital,* 28 Conn. App. 113, 124, 612 A.2d 82 (1992). Because the commission could properly have imposed this condition incident to its granting of the special exception permit, and there is no indication that it instead improperly imposed the condition on its granting of the zone change, its decision must stand.

## IV

The plaintiffs next claim that McDonalds Corporation was an improper applicant because it lacked a sufficient interest in the subject property. We disagree.

Section 117-900 of the Monroe zoning regulations provides in pertinent part that "[t]he owner or owners of a tract of land may petition for the establishment of a design district (D) only, coincidentally with an application for special exception permit . . . ." Section 117-900 (A) provides that "[i]n Design Districts, the existing use of land shall not be changed . . . until a site plan of development shall have been prepared by the owner of such land . . . ." McDonalds' application lists McDonalds Corporation as the applicant. The plaintiffs argue that because McDonalds Corporation was a lessee, not an owner, of the property at the time that the application was filed, the application was defective. The application also is signed, however, by George W. Ganim and Laurese Coury, owners of the subject parcel. The signatures of Ganim and Coury appear on the application immediately after the following: "The undersigned, being all of the owners of the premises referred above, hereby consent to the filing of this application together with meeting of all requirements of the applicant by the Commission for same."

The commission enjoys reasonable discretion in construing the regulations that it is charged with enforcing. *Spero* v. *Zoning Board of Appeals,* 217 Conn. 435, 440, 586 A.2d 590 (1991); *Schwartz* v. *Planning & Zoning Commission,* 208 Conn. 146, 152, 543 A.2d 1339 (1988). The plaintiffs bear the burden of proving that the commission acted unreasonably, arbitrarily or illegally. See *Spero* v. *Zoning Board of Appeals,* supra, 441. We cannot say that the commission's interpretation of its regulations was unreasonable, arbitrary or illegal. The regulations provide that the owner may "petition" for a change of zone and a special exception permit. Monroe zoning regulations § 117-900. Webster's Ninth New Collegiate Dictionary defines "petition" as "to ask for; solicit." In light of the fact that the owners signed the application, explicitly consenting to it, the commis-

sion reasonably concluded that they, as well as McDonalds, petitioned for the zone change and special exception permit. See *DiBonaventura* v. *Zoning Board of Appeals,* 24 Conn. App. 369, 376, 588 A.2d 244, cert. denied, 219 Conn. 903, 593 A.2d 129 (1991).

Similarly, the commission reasonably concluded that the § 117-900 (A) directive that "[i]n Design Districts, the existing use of land shall not be changed . . . until a site plan of development shall have been prepared by the owner of such land" was satisfied. Section 117-900 (E) provides that "[w]here deemed appropriate in the judgment of the Commission . . . a site plan of development in substantial compliance with the requirements herein may be approved with such minor variations from the strict application of the provisions of these regulations as will provide for the most appropriate use of the land and as will protect the public health and safety and preserve property values and as will provide for the most orderly development of the land. No variations shall be permitted that violate the integrity of these regulations . . . ." The commission acted well within its discretion in concluding that there had been substantial compliance with the site plan of development, despite the fact that the application was prepared by McDonalds Corporation rather than by the owners of the property.

The plaintiffs claim further that McDonalds Corporation, a mere lessee of the parcel, lacked standing to apply for the zone change and special exception permit. The principles governing nonowner standing in zoning cases are set forth in *Richards* v. *Planning & Zoning Commission,* 170 Conn. 318, 365 A.2d 1130 (1976). The critical inquiry is whether the applicant is "a real party in interest with respect to the subject property. Whether the applicant is in control of the property, whether he is in possession or has a present or future right to possession, whether the use applied

for is consistent with the applicant's interest in the property, and the extent of the interest of other persons in the same property, are all relevant considerations in making that determination." Id., 323–24. Our courts, in accordance with the general rule, recognize the rights of certain lessees to apply for zone changes and special permits. Id., 322.

The trial court found that McDonalds Corporation had standing because it had a substantial interest in the subject parcel. We agree. In its uniform land use application, McDonalds stated that its purpose in seeking the zone change and special exception permit was to accommodate a drive-through window at its restaurant. Further, the transcript of the proceedings in the Superior Court indicate that the trial court determined, after reviewing the lease, that McDonalds was in fact a lessee of the property. These facts are sufficient to establish that McDonalds Corporation was a real party in interest with respect to the property.

Finally, the plaintiffs challenge McDonalds Corporation's standing to seek a zone change and special exception permit on the ground that McDonalds Corporation was a lessee of only one acre of the four acre parcel at issue. We agree that McDonalds was not a real party in interest with regard to the three acres that it did not lease. As we noted earlier, however, the owners of the parcel signed the uniform land use application, explicitly consenting to its being filed. Thus, the application to rezone the entire four acre parcel was properly before the commission, and the application was not fatally defective.

## V

The plaintiffs next claim that the commission improperly held but a single vote on the requests for a change of zone and special exception permit. We disagree.

Our review of the record discloses that the commission held separate votes on McDonalds Corporation's requests for a zone change and special exception permit. The minutes of the commission's July 5, 1990 meeting indicate that a motion to deny the application for a change of zone failed, two votes to three. We view this vote as the functional equivalent of a vote to approve the application for a change of zone. Indeed, General Statutes § 8-3 (c) provides that where a commission is faced with a petition seeking a change of zone, "[t]he commission shall adopt or deny the changes requested in such petition." Thus, the commission had only two choices with regard to the request for a change of zone: approve the request or deny it. The commission's vote failing to deny the request constituted an approval thereof.

After the vote rejecting the motion to deny the change of zone, the commission voted to approve "the application for zone change and special exception permit . . . ." Because the change of zone already had been approved, however, the practical effect of this vote was to grant only the application for a special exception permit. Because the commission held separate votes on the application for a special exception permit and application for a change of zone, the plaintiffs cannot prevail on this claim.[4]

## VI

The plaintiffs next claim that the commission illegally imposed the following condition on its approval of the application for a special exception permit: "Construction shall commence no later than one year from the date of decision: July 5, 1991." We disagree.

---

[4] We note that the plaintiffs correctly concede that the commission properly held but one hearing on the applications. See *Norris* v. *Planning & Zoning Commission*, 156 Conn. 592, 595–96, 244 A.2d 378 (1968).

The plaintiffs argue that the condition is void because it conflicts with § 117-900 (C) of the Monroe zoning regulations, which provides that an approved site plan "shall become null and void unless construction of building is in progress and not less than fifty percent (50%) of building foundations shown on the approved site plan of development are completed within one (1) year of the date of approval of such plan, unless an extension of time is granted by the Commission." They claim that the condition requiring that construction begin within one year is void because it is less restrictive than § 117-900 (C), which requires not only that construction begin within one year, but that 50 percent of the building's foundation be completed within one year.

The plaintiffs correctly assert that the commission cannot attach a condition that conflicts with the applicable zoning regulations to its approval of a special exception permit. " '[T]he conditions under which a special [permit] is allowed must be found in the regulations and cannot be altered; and if a condition is imposed by a commission without being warranted by the regulations, it is void.' [*Beckish* v. *Planning & Zoning Commission*, 162 Conn. 11, 15, 291 A.2d 208 (1971).]" *Hochberg* v. *Zoning Commission*, 24 Conn. App. 526, 529, 589 A.2d 889 (1991). The condition attacked by the plaintiffs does not, however, conflict with § 117-900 (C) of the Monroe zoning regulations. Section 117-900 (C) expressly provides that the commission may extend the time period within which 50 percent of the building's foundation must be completed. The condition that construction of the building need commence only within one year merely extended the deadline for completing the foundation. As such, the condition did not conflict with the applicable zoning regulations.

## VII

The plaintiffs next contend that the parking proposal approved by the commission is void because it

conflicts with the applicable zoning regulations. We are not persuaded.

The proposal approved by the commission included forty-four parking spaces. The plaintiffs argue that forty-four parking spaces are inadequate in light of § 117-2402 (G) of the Monroe zoning regulations, which requires one parking space for each twenty-five square feet of patron floor area in a fast food establishment. The plaintiffs, referring to the floor plan prepared by McDonalds, estimate that the patron floor area covers 1725 square feet. Thus, they conclude, a minimum of seventy parking spaces are required by the applicable zoning regulations.

The defendants point out that § 117-2403 of the regulations provides: "Where separate parts of a building or structure are used for purposes requiring different amounts of parking space, the number of spaces shall be determined by adding the number of spaces required for the area devoted to each type of use." They contend that the floor plan sets forth two distinct areas of the building, dining and service, which are separated by a sloped wall and knee wall. The defendants argue that § 117-2402 (F), which requires one parking space for each fifty square feet of patron floor area in a restaurant, should be applied to the area designated dining, while § 117-2402 (G), which requires one parking space for each twenty-five feet, should be applied to the area designated service. Applying the plaintiffs' square footage calculations 1218.75 square feet of dining area and 516.38 square feet of customer service area, the defendants conclude that the regulations require twenty-four parking spaces for the dining area and twenty parking spaces for the customer service area—a total of forty-four parking spaces. The plaintiffs reply that even if the defendants' approach is followed, forty-six parking spaces are required.

The trial court's memorandum of decision indicates that it agreed with the defendants that the service area is separate from the dining area and, therefore, that the parking space requirements should be calculated at a rate of one space per twenty-five square feet of service area and one space per fifty square feet of dining area. Our review of the floor plan indicates that the trial court correctly determined that the commission did not act arbitrarily, improperly or in abuse of its discretion when it found that the proposed building contained a service area that was separate from the dining area.

Further, the trial court properly found that the commission did not act arbitrarily, improperly or in abuse of its discretion when it found that the Monroe zoning regulations required that the premises include forty-four parking spaces. The parties agree that the portion of the floor plan labeled dining contains 1218.75 square feet, while the portion of the floor plan labeled customer service contains 516.38 square feet. Whether these figures require forty-four parking spaces, as the defendants claim, or forty-six parking spaces, as the plaintiffs claim, depends on the methodology used to calculate the requisite number of parking spaces. The dining area requires one parking space per fifty square feet. Monroe zoning regulations § 117-2402 (F). Thus, the first 1200 square feet of dining area require twenty-four parking spaces. If, and only if, the remaining eighteen feet of dining space require an additional parking space, the dining area requires a total of twenty five parking spaces. Similarly, the service area requires one parking space per twenty-five square feet. Monroe zoning regulations § 117-2402 (G). Thus, the first 500 feet of service area requires twenty parking spaces. If, and only if, the remaining sixteen square feet of service require another parking space, the service area requires a total of twenty-one parking spaces. As a

result, whether the entire building requires forty-four or forty-six parking spaces depends on whether each fraction of the applicable square footage requirement triggers an additional mandatory parking space. The commission and the trial court apparently concluded that an additional parking was required for only each full square footage increment.

Our review of the regulations indicates that these conclusions were not unreasonable. Section 117-2402 (F), which applies to the dining area, mandates "[o]ne (1) space for each fifty (50) square feet of patron floor area . . . ." Section 117-2402 (G), which applies to the service area, requires "one (1) space for each twenty-five (25) square feet of patron floor area." Conspicuously absent from these regulations is language requiring an additional parking space for each portion of fifty or twenty-five square feet, respectively.

The trial court properly determined that the commission's requirement that McDonalds' premises include forty-four parking spaces was not arbitrary, capricious or an abuse of discretion. Thus, the plaintiffs cannot prevail on this claim.

## VIII

The plaintiffs finally maintain that the commission's hearing was a nullity because it was held before the Monroe inland wetlands commission had issued a wetlands permit for the project. We disagree.

The plaintiffs claim that because the inland wetlands commission did not approve the wetlands application until after the application for a zone change and special exception permit was heard by the Monroe planning and zoning commission, the application was incomplete at the time of the planning and zoning commission's hearing. Thus, the plaintiffs contend, the planning and zoning commission's hearing on the appli-

cation was a nullity. In support of their claim, the plaintiffs rely on §§ 117-905 (A) and 117-908 of the Monroe zoning regulations. Section 117-905 (A) provides: "An application for a change of zoning classification to a design district shall be submitted in complete form . . . ." Section 117-908 provides: "[Inland wetlands] approvals and/or permits must be submitted as part of the zone change and/or special exception permit application. No application shall be deemed to be complete until the aforesaid information is submitted to the Commission by the applicant." These regulations, they contend, prohibit the planning and zoning commission from holding a hearing on an application for a change of zone and special exception permit until it receives the necessary approvals from the inland wetlands commission.

These regulations merely state that the application for a zone change and special exception permit were not complete until the inland wetlands permit was received. The regulations did not prohibit the planning and zoning commission from holding a hearing on an incomplete application. Section 117-900 (B) of the regulations provides that "[a] public hearing shall be held in accordance with the General Statutes." General Statutes § 8-3 (g) merely directs that the inland wetlands application be filed not later than the day the site plan application is filed with the planning and zoning commission and that the planning and zoning commission not render a decision on the site plan application until the inland wetlands commission has submitted its report and final decision. The planning and zoning commission's decision to hold a hearing on the application for a zone change and special exception permit violated neither the Monroe zoning regulations nor our General Statutes.

The plaintiff claims further that the commission's consideration of the report of the inland wetlands commission without a public hearing thereon was improper

because it deprived them of an opportunity to be heard, and, if appropriate, to offer evidence in rebuttal. We disagree.

General Statutes § 8-3 (g) required the planning and zoning commission, in making its decision on the application, to give due consideration to the report of the inland wetlands commission. A commission may not, however, consider evidence submitted after a hearing without providing the opposition with a fair opportunity to inspect the evidence and to offer evidence in explanation or rebuttal. *Blaker* v. *Planning & Zoning Commission,* supra, 477–78; *Wasicki* v. *Zoning Board,* 163 Conn. 166, 172–73, 302 A.2d 276 (1972); *Carlson* v. *Fisher,* 18 Conn. App. 488, 503, 558 A.2d 1029 (1989). Here, the inland wetlands commission held a public hearing on the plaintiffs' application to it. The public hearing before the inland wetlands commission was sufficient to safeguard the plaintiffs' right to be heard regarding the matters addressed by the inland wetlands commission in its report.

The plaintiffs cannot prevail on this claim.

The judgment is affirmed.

In this opinion the other judges concurred.

