[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs, Helen F. Mailloux and Gustave W. Beck, appeal from a decision by the defendant, Planning and Zoning Commission of the Town of Monroe (the "commission") approving the application of the defendant, Lorrain Iwaszkiewicz, for a special exception to expand a nursery school/day-care facility which she operates at her residence. Mrs. Iwaszkiewicz and her husband own the property that is the subject of the commission's decision. Mailloux resides at property which abuts Iwaskiewicz's property to the north. Beck resides at property which abuts Iwaskiewicz's property to the south.
On February 25, 1993, the Commission voted to approve Iwaskiewicz' application for a special exception permit to allow Iwaskiewicz to establish a nursery school/day care facility at her residence that was licensed by the state to accommodate a maximum of 12 children. On September 1, 1994, Iwaskiewicz filed an application to "revise and/or amend" the special exception permit to allow for the care of up to 36 children. The application includes plans for the construction CT Page 13887 of a sizable addition to the current structure and the creation or additional off-street parking spaces to accommodate the parking needs of staff and clientele.
The commission held a public hearing on Iwaskiewicz' application on September 22, 1994. At the public hearing, Mailloux and Beck testified in opposition to the proposed expansion of Iwaskiewicz's nursery school/day care facility. Together, Mailloux and Beck expressed concerns about excess traffic, parking, septic system capacity, drainage, the danger associated with a swimming pool now located on the premises, air, noise, water and ground pollution and the fire hazard that might result from an expansion of the present facility.
Following the public hearing, the commission discussed the application at its regular meetings held October 6, 1994 and November 3, 1994. At the November 3rd meeting, the commission voted unanimously to approve Iwaskiewicz's application. The text of the final decision of the commission states seven findings made by the commission and eighteen conditions subject to which the application was approved. The plaintiffs timely appealed.
On appeal, the plaintiffs allege that: (1) the commission should not have considered Iwaskiewicz's application because the plans included therein do not conform to the requirements of § 117-1800 of the Town of Monroe's Zoning Regulations, ("zoning regulations"); (2) by accepting and considering the application as submitted, the commission violated the legislative intent of § 117-1800; (3) the commission improperly construed the zoning regulations relating to off-street parking requirements; and (4) the commission's findings are not reasonably supported by the evidence in the record.[1]
General Statutes 8-8(b) provides that "any person aggrieved by any decision of a board may take an appeal to the superior court. . . ." "`Board' means a . . . combined planning and zoning commission. . . ." General Statutes8-8(a)(2). Even though the defendants have not challenged the plaintiffs' claim that they are aggrieved, "[p]roof of aggrievement is essential to a court's jurisdiction of a zoning appeal. Hughes v. Town Planning Zoning Commission,156 Conn. 505, 509, 242 A.2d 705 (1968)." ConnecticutResources Recovery Authority v. Planning Zoning Commission,225 Conn. 731, 739n.12, 626 A.2d 705 (1993). For that reason, CT Page 13888 in a zoning appeal, the court should make a finding as to whether any plaintiff is aggrieved. Baccante v. Zoning Boardof Appeals, 153 Conn. 44, 45, 212 A.2d 411 (1965); Fox v.Zoning Board of Appeals, 146 Conn. 665, 667, 154 A.2d 520
(1959). General Statutes 8-8(a)(1) provides that an "`aggrieved person' includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board." The evidence before the court establishes that the plaintiffs own property abutting the subject property. By statutory fiat those plaintiffs are aggrieved. Zoning Board of Appeals v. Planning Zoning Commission, 27 Conn. App. 297, 301, 605 A.2d 885
(1992).
Before addressing the merits of the plaintiffs' claims, it is well to note the standard of review which the court must observe in examining the action of the commission. "When considering an application for a special [permit], a zoning authority acts in an administrative capacity, and its function is to determine whether the proposed use is expressly permitted under the regulations, and whether the standards set forth in the regulations and statutes are satisfied. A.P. W.Holding Corporation v. Planning Zoning Board, 167 Conn. 182,185, 355 A.2d 91 (1974). It has no discretion to deny the special [permit] if the regulations and statutes are satisfied. Westport v. Norwalk, 167 Conn. 151, 155,355 A.2d 25 (1974)." Daughters of St. Paul, Inc. v. Zoning Board ofAppeals, 17 Conn. App. 53, 56, 549 A.2d 1076 (1988). In reviewing the action of a board on a special permit, "[c]ourts are not to substitute their judgment for that of the board . . . and decisions of local boards will not be disturbed so long as honest judgment has been reasonably and fairly exercised after a full hearing. . . . Upon appeal, the trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or valid reasons. (Citations omitted.) Whittaker v. Zoning Board of Appeals,179 Conn. 650, 654, 427 A.2d 1346 (1980). Since the credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency; Feinson v. Conservation Commission, 180 Conn. 421,425, 429 A.2d 910 (1980); the court must determine the correctness of the conclusions from the record on which they are based. Housatonic Terminal Corporation v. Planning Zoning Board, 168 Conn. 304, 306, 362 A.2d 1375 (1975). The record includes knowledge acquired by board members through CT Page 13889 personal observation. Burnham v. Planning Zoning Commission,189 Conn. 261, 267, 455 A.2d 339 (1983)." (Internal quotation marks omitted.) Torsiello v. Zoning Board of Appeals,3 Conn. App. 47, 49-50, 48 A.2d 483 (1984). "The decision of the zoning authority will only be disturbed if it is shown that it was arbitrary, illegal or an abuse of discretion." Id., 50.
 I
The plaintiffs first claim that the commission should not have accepted and considered Iwaskiewicz's application because the application does not comply with § 117-1800A of the zoning regulations.[2] Specifically, the plaintiffs claim that: (1) the plans included in the application do not meet the "requirements of a class A-2 survey as defined by the standards of the Connecticut Association of Land Surveyors (C.A.L.S.)"; (2) "the existing and proposed structures do not appear upon any plan or plans"; and (3) "[n]o plan or plans submitted bear(s) the `seal' and signature of a registered land surveyor licensed to practice in the state of Connecticut." The commission argues in response that the requirements § 117-1800 do not apply to an application to revise an existing special exception permit such as Iwaskiewicz's. Rather, the commission contends that § 117-1801C provides the commission with the discretion to permit the changes in the use and structure that Iwaskiewicz proposes in her application.[3] The commission posits that because it found that the use proposed in Iwaskiewicz's application complies with § 117-1801A, the application did not have to complies with § 117-1801A, the application did not have to meet the requirements of § 117-1800.
The commission's argument is unavailing. The plain language of § 117-1801C makes clear that "any change in the use or structure" for which a special exception permit is in force is subject to the commission's review. If such a change "substantially expands enlarges or alters the use or structure" such that it "may no longer comply with the conditions of § 177-1801A," a new application, public hearing and decision are required. By holding a public hearing and issuing a formal, written "Final Decision" the commission was clearly complying with that portion of § 117-1801C concerning a change in use that substantially expands, enlarges or alters the use or structure that was the subject of Iwaskiewicz's original special exception permit. Under these circumstances, CT Page 13890 § 117-1801C also requires the submission of a "new application." The commission does not explicitly dispute the plaintiff's contention that such an application must comply with the requirements of § 117-1800. Instead, the commission interprets § 117-1801C to mean that when the commission approves an application and grants an amended permit finding that the change in use complies with the provisions of § 117-1801A, the proposed change in use must have been merely "subject to review" and therefore not subject to a new application, public hearing and decision. Under the facts of the present case, the commission's argument is fallacious; the decision to approve Iwaskiewicz's application rendered the application, the public hearing, and the decision itself superfluous.
Nevertheless, under the circumstances disclosed in the record, the commission did not err in accepting and considering the application. The rule that "when considering an application for a special [permit], a zoning authority[']s . . . . function is to determine whether the proposed use is expressly permitted under the regulations, and whether the standards set forth in the regulations and statutes are satisfied"; Daughters of St. Paul, Inc. v. Zoning Board ofAppeals, supra, 17 Conn. App. 56; refers to the substantive requirements of the land use regulations. While a commission may have discretion to deny an application because it is incomplete; T. Tondro, Connecticut Land Use Regulation (2d Ed.), pp. 431-433; the rule is that a "special permit application and site `plan must be in substantial compliance with the applicable regulations. See e. g. Michel v. Planning Zoning Commission, [28 Conn. App. 314, 324, 612 A.2d 778
(1992), cert. denied, 223 Conn. 923, 614 A.2d 824 (1992)]; cf.H S Torrington Associates v. Lutz Engineering Co.,185 Conn. 549, 555, 441 A.2d 171 (1981) (substantial compliance with mechanic's lien statutes sufficient); State v. Godek,182 Conn. 353, 360, 438 A.2d 114 (1980), cert. denied,450 U.S. 1031, 101 S.Ct. 1741, 68 L.Ed.2d 226 (1981) (substantial compliance with court rule for acceptance of guilty plea 1031, 101 S.Ct. 1741, 68 L.Ed.2d 226 (1981) (substantial compliance with court rule for acceptance of guilty plea sufficient); but see Resnick v. Civil Service Commission,156 Conn. 28, 32-33, 238 A.2d 391 (1968) (substantial compliance with civil service law not sufficient). Substantial compliance with a statute or regulation is such compliance with the essential requirements of the statute or regulation as is CT Page 13891 sufficient to assure its objectives. Wheeler v. District ofColumbia Board of Zoning Adjustment, 395 A.2d 85, 90
(D.C.App. 1978); see Superior/Ideal, Inc. v. Board of Review ofCity of Oklahoma, 419 N.W.2d 405, 407 (Iowa 1988); City ofKansas City v. Board of County Commissioners of WyandotteCounty, 213 Kan. 777, 518 P.2d 403, 410 (1974). What constitutes substantial compliance, of course, is a matter depending on the facts of each particular case. Dorignac v.Louisiana State Racing Commission, 436 So.2d 667, 669 (La.App. 1983).' Paige v. Town Plan Zoning Commission, Superior Court, Judicial District of Fairfield, No. 289197 (1993), 8 Conn. L. Rptr. No. 9, 273, 276 (1993) [affirmed, 35 Conn. App. 646,646 A.2d 277 (1994), reversed on other grounds, 235 Conn. 448,666 A.2d ___ (1995)]." Marion Road Association v. Planning Zoning Commission, Superior Court, Judicial District of Fairfield, No. 304365 (1994).
While the application here did not include a class A-2 survey nor did the plans bear the seal of a registered land surveyor licensed to practice in Connecticut, the requirement that existing and proposed structures appear on the plans was fairly satisfied. Given the nature of the relief sought and the objectives of the regulations, the commission could reasonably find that the application substantially complied with the regulations. The commission did not abuse its discretion in accepting and considering the application.
 II
The plaintiff's claims that, by finding that Iwaszkiewicz's plans provided for sufficient off-street parking, the commission failed to properly construe the off-street parking requirements set forth in §§ 117-2402 and 117-2407.[4] The commission claims that fifteen spaces are required by the regulations and that the plans provide for fifteen spaces.
At the public hearing held by the commission on September 22, 1994, Iwaskiewicz testified that her license, if approved by the state, will allow her to care for up to thirty-six children at any given time. She further testified that the state of Connecticut requires ratios of one employee to every four children under three years of age and one employee to every ten children three years of age and older. Iwaskiewicz also stated that she would have a maximum of seven employees. CT Page 13892 By approving the application, the commission necessarily determined that the thirteen exterior spaces, and two garage spaces shown on the plans, provided for sufficient off-street parking pursuant to the applicable regulations.
The plaintiffs argue that if all thirty-six of the children cared for at the proposed day care center are under three years of age, state law will require the center to employ a minimum of nine employees. Section 117-2402 of the zoning regulations requires one off-street parking space for each employee. The plaintiffs observe further that § 117-2402 requires one off-street space "for every five persons of licensed capacity," which adds seven spaces to the total required. Finally, the plaintiffs contend that the residential use of the property requires an additional two off street spaces in addition to any garage space. According to the plaintiffs, therefore, the regulations require that the plan provide for a minimum of eighteen parking spaces, none of which can be garage spaces. The plans submitted by Iwaszkiewicz only provide for thirteen such spaces. Therefore, the plaintiffs argue that the commission should not have approved Iwaszkiewicz's application.
The application provided for fifteen off-street parking spaces, including two garage spaces, for a mixed use as residential and day care center. Section 117-2407 of the Zoning regulations of the Town of Monroe provide: "Except in the case of a shopping center, where separate parts of a building or structure or of a floor of a building are used for purposes requiring different numbers of parking spaces, the number of spaces shall be determined by adding the number of spaces required for the area devoted to each type of use." Unlike certain other uses enumerated in the regulations, neither the number of off-street parking spaces required for a single family residential dwelling nor the number of off-street parking spaces required for a day care center is a function of the area devoted to such use. Compare Michel v.Planning Zoning Commission, 28 Conn. App. 314, 322-325,612 A.2d 778, cert. denied, 223 Conn. 923, 614 A.2d 824 (1992). For a "Residential Single Family Dwelling" the regulations require "[t]wo (2) off street spaces per dwelling unit; garage or carport spaces shall not apply." Zoning Regulations of the Town of Monroe § 117-2401. For a "Day Care Center; Nursery School" the same regulation prescribes "[o]ne (1) space for each employee, plus one (1) one space for every five (5) CT Page 13893 persons of licensed capacity." The General Assembly has conferred the jurisdiction to issue a license for the operation of a child day care center on the commissioner of public health and addiction services. General statutes §§ 19a-77
to 19a-87a. The words "licensed capacity" in § 117-2401 of the Zoning Regulations of the Town of Monroe is a term of art defined by that commissioner in Regulations of Connecticut state Agencies § 19a-79-1a(ff) as "the maximum number of children allowed under the license to be in the licensed premises at any one time." See also Regulations of Connecticut state Agencies § 19a-79-2a(c)(3)(C). Although there is no "presumption regarding the consistency between local zoning regulations and state statutes or state regulations"; FyberProperties Killingworth Limited Partnership v. Shanoff,228 Conn. 476, 486, 636 A.2d 834 (1994); here it is apparent that the planning zoning commission, as the legislative body which enacted the zoning regulations, intended just such consistency between § 117-2402 of its zoning regulations and the requirements codified in the Regulations of Connecticut state Agencies for the staffing of day care centers.
Section 19a-79-4a(c)(4) of the Regulations of Connecticut state Agencies provides: "Proper staff child ratios shall be maintained at all times. (A) There shall be at least one (1) program staff person for every ten (10) children or fraction thereof in attendance." To the same effect is Regulations of Connecticut State Agencies § 19a-79-11(d). However, for children ages six weeks to three years, "[t]here shall be at least one (1) person qualified . . . for every four (4) children or fraction thereof in attendance." Regulations of Connecticut State Agencies § 19a-79-10(c). "When there is a mixed age group the lower required ratio for the age of the youngest child shall prevail." Regulations of Connecticut State Agencies § 19a-79-4a(c)(4)(B). While the phrase "mixed age group" is not defined, the scheme of the regulations leaves no doubt that it refers to a group of children some of whom are under and some of whom are over three years of age.
The plaintiffs argue that if all thirty-six of the children cared for at the proposed day care center are under three years of age, state law will require the center to employ a minimum of nine employees. "`A worst possible scenario can always be imagined.'" State v. Smith, 10 Conn. App. 624,632, 525 A.2d 116 (1987), quoting State v. Smith,201 Conn. 659, 670, 519 A.2d 26 (1986). However, the CT Page 13894 applicable standard of review requires that this court determine whether the commission approved an application which violated the zoning regulations. Guided by Federico v.Planning Zoning Commission, 5 Conn. App. 509, 500 A.2d 576
(1985), this court finds that there is no such violation.
In Federico the Appellate Court concluded that a planning commission had mistakenly relied on speculative testimony as to the future use of a proposed lot to find zoning violations in a resubdivision plan. These violations of frontage and yard size zoning requirements would have occurred, if ever, only when a subsequent building permit application positioned a residence on the site in a certain manner. The court held that a commission may legally base subdivision application denials on zoning violations "inherent in the plan itself as submitted" but not on those that are "entirely speculative." Id., 514-15. However, a subdivision plan that, as submitted, complies with town zoning regulations should not be disapproved on merely "inchoate" violations. Ibid.
Here, by analogy, there is no way to predetermine if any, and if so how many, children to be cared for by the applicant's facility will be under three years of age. Not even the applicant's forecast is necessarily binding on the commission since, "[l]ike a variance, a special permit is not a personal privilege. `It is as legal status granted to a certain parcel of realty without regard to ownership.'Garibaldi v. Zoning Board of Appeals, 163 Conn. 235, 239,303 A.2d 743 (1972). . . ." Van Stone's Cypress v. ZoningCommission, Superior Court, Judicial District of Fairfield, No. 292015 (1993); see also Fromer v. Two Hundred PostAssociates, 32 Conn. App. 799, 805, 631 A.2d 347
(1993) (holding that "an inland wetlands permit is concerned solely with the property to be regulated, and that the change of ownership does not affect the validity of the permit" and recognizing that "[c]ourts in other jurisdictions have recognized that conditional use permits run with the land and not with the owner."); Griswold Hills v. Town Plan ZoningCommission, Superior Court, Judicial District of Hartford-New Britain at Hartford, No. 950705701 (1995) (stating that land use permits generally, "whether it be an inland wetlands permit, a variance, a site plan, special permit or subdivision permit" run with the land).
"A program caring for children under three (3) years of CT Page 13895 age is required to have a separate endorsement by the Department [of Health Services]." Regulations of Connecticut State Agencies § 19a-79-10(b). An application for the initial granting or renewal of license to operate a child day care center must contain written verification of compliance with local zoning requirements. Regulations of Connecticut State Agencies § 19a-79-2a(b)(2)(D). "The Commissioner may suspend, revoke or refuse to grant a license whenever in the judgment of the Commissioner the child day care center . . . fails to comply with . . . ordinances or regulations related to . . . zoning." Regulations of Connecticut State Agencies § 19a-79-2a(d)(1)(A)(ii).
The Commissioner of Public Health and Addiction Services could license Iwaszkiewicz or another person to operate a day care center on these premises only for children over the age of three years. This would require four employees to be available to care for these children, and four off-street parking spaces for those employees. In addition, § 117-2402 of the Monroe zoning regulations requires "one (1) space for every five (5) persons of licensed capacity." Since Iwaszkiewicz' application seeks approval for a day care center with a licensed capacity of thirty-six, eight additional off-street parking spaces are required. To this must be added the two additional off-street parking spaces for the residential use; Zoning Regulations of the Town of Monroe §§ 117-2402, 117-2407; bringing the total required off-street parking spaces to fourteen.
Iwaszkiewicz' application for a special permit provided for fifteen off-street parking spaces. However, two of these spaces were within her garage. The plaintiffs claim that these cannot be counted toward the number of required off-street parking spaces because § 117-2402 of the Monroe zoning regulations provides that for a "Residential Single Family Dwelling" there shall be provided "[t]wo (2) off street spaces per dwelling unit; garage or carport spaces shall not apply." (Emphasis added.) However, within the same regulation, § 117-2402, there is no prohibition against the use of garage spaces to satisfy the off-street parking requirements for a day care center, and a court may not read such an exception into that porion [portion] of the regulation. Middlesex Ins. Co. v. Quinn,225 Conn. 257, 265, 622 A.2d 572 (1993); Carron v. Inland Wetlands Watercourses Commission, 222 Conn. 269, 277, 610 A.2d 584
(1992); Sharp v. Wyatt, Inc., 31 Conn. App. 824, 853 n. 19, CT Page 13896627 A.2d 1347 (1993); Vecca v. State, 29 Conn. App. 559, 564,616 A.2d 823 (1992). Therefore, the two garage spaces may be ascribed to the day care center use, the applicant had the fourteen required off-street parking spaces, and the commission did not act illegally, arbitrarily or in abuse of its discretion in implicitly finding that the application satisfied the parking regulations.
 IV
The final ground of the plaintiff's appeal is that the commission's findings were not consistent with and not reasonably supported by the evidence in the record. Specifically, the plaintiffs argue that: (1) the commission did not properly consider evidence of traffic hazards, safety risks, and the detrimental effect on neighboring property values associated with the expansion proposed by Iwaskiewicz; (2) the commission made its finding that Iwaskiewicz complied with lot size and set back requirements without the benefit of accurate maps; and (3) the evidence in the record does not support the commission's finding that the plans provide for adequate off-street parking.
"The settled standard of review of questions of fact determined by a zoning authority is that a court may not substitute its judgment for that of the zoning authority as long as it reflects an honest judgment reasonably exercised."Oakwood Development Corporation v. Zoning Board of Appeals,20 Conn. App. 458, 460, 567 A.2d 1260, cert. denied,215 Conn. 808, 576 A.2d 588 (1990). "Conclusions reached by the commission must be upheld by the trial court if they are reasonably supported by the record. The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the agency. The question is not whether the trial court would have reached the same conclusion, but whether the record before the agency supports the decision reached. . . . The action of the commission should be sustained if even one of the stated reasons is sufficient to support it." (Citation omitted; internal quotation marks omitted.) DeBeradinis v. Zoning Commission,228 Conn. 187, 198, 635 A.2d 1220 (1994). "Where a zoning [authority] does not formally state the reasons for its decision, however, the trial court must search the record for a basis for the board's decision." Bloom v. Zoning Board ofAppeals, 233 Conn. 198, 208, 658 A.2d 559 (1995). CT Page 13897 "[C]ommission members may legitimately utilize their personal knowledge in reaching a decision." Frito-Lay, Inc. v. Planning Zoning Commission, 206 Conn. 554, 570, 538 A.2d 1039 (1988). Moreover, in evaluating testimony before it, "[a]n administrative agency is not required to believe any witness . . . ." Manor Development Corp. v. Conservation Commission,180 Conn. 692, 697, 433 A.2d 999 (1980).
A. Traffic Hazards
The commission's formal decision included a finding that "Hiram Hill Road, which serves the use, is more than adequate to carry existing and prospective traffic. There exists adequate provision for access and egress which will not result in traffic hazards, and adequate off-street parking is provided. By field observation, Hiram Hill Road, through the vicinity, is an extended straight-away with excellent sight lines and substantial width. Its daily vehicle load is not excessive and the trips generated by this use would result in no appreciable increase. It is noted that the argument that parking may occur on the street is moot, as there is no parking restriction on this road and on-street parking is permitted in the town of Monroe." The plaintiffs argue that the record contains insufficient evidence to support the commission's finding. In support of their argument, the plaintiffs point to testimony they presented at the public hearing that the proposed expansion of the day care center would create unsafe traffic conditions. At the public hearing, the plaintiff Mailloux testified that Hiram Hill Road is "a straight narrow road with heavy traffic in the morning and the early evening. . . . On special events, like grandfathers, grandparents day, the traffic will be unsafe." In addition, Mailloux submitted a letter from the plaintiff, Beck, that states that "[t]here will be an enormous amount of unnecessary automobile traffic with parents bringing their children to this address."
The record, however, also includes a video tape of the premises, from which the commission could have found that the traffic safety hazards cited by the plaintiffs did not exist. The tape provides views of Hiram Hill Road both to the north and south of Iwaskiewicz's property. The commission viewed the video tape at its regular meeting on November 3, 1995. In addition, Robert Martin, the chairman of the commission, noted at the meeting that after viewing the site, he was convinced CT Page 13898 that ample visibility exists on Hiram Hill Road in both directions. Furthermore, at the same meeting, the commission discussed the traffic concerns raised by the plaintiffs' testimony at the public hearing and necessarily determined that the traffic is not as heavy as the plaintiffs had claimed. The sufficiency of roadways is a question of fact for the commission, not for the court. Shailer v. Planning Zoning Commission, 26 Conn. App. 17, 25, 596 A.2d 1336 (1991). The commission's factual finding that Hiram Hill Road is adequate to accommodate the use proposed by Iwaskiewicz is supported by substantial evidence in the record.
B. Property Values
Section 117-1800 requires that, for the commission to grant a special exception permit, it must find that the proposed use will not be detrimental to property values in the neighborhood.[5] At its regular meeting on November 3, 1994, the commission found that "based on material and testimony in the record and by observation of the site and general area, the use, buildings, structures and other improvements will not be detrimental to the health, safety, welfare and property values in the neighborhood and will be in harmony with and conform to the orderly development of the town." The commission further found that "existing landscape is suitable and adequate when supplemented by fencing, as specified hereafter. There exists a substantial buffer to the most immediate neighbor to the north. The structural additions will be minimally disruptive to the site and its design and appearance is that of a dwelling and is totally compatible with the existing neighborhood." The plaintiffs argue that there is insufficient evidence in the record to support the determination that property values will not be detrimentally affected by the proposed expansion of the day care center.
There is sparse reference anywhere in the record to the effect the proposed expansion of the day care center might have on property values. However, at the public hearing, Mailloux, reading from the letter she submitted to the commission, stated: "this addition for business will cause a decline in property value. The air, noise, water and ground pollution will be substantial."[6] The court must determine whether adequate evidence exists to support the commission's finding that property values would not be adversely affected by the proposed use in light of the plaintiffs' pollution CT Page 13899 concerns.
1. Water and Ground Pollution
At the public hearing, Mailloux stated: "with an existing large swimming pool, numerous decks, a storage shed, a play area, parking lots and the addition, where will the new septic system with leaching fields will be located? We having well water on Hiram Hill Road and any septic system has to be 75 feet away from an existing well." Iwaskiewicz testified at the public hearing that "[w]e have hired Rick Kellogg to come and put an entire new system in . . . ." Moreover, Iwaskiewicz' application includes a letter to her from Thomas Monks, Town Sanitarian, that states "[t]he proposed septic system addition submitted by Monroe Septic meets both local and State Health Codes requirements for a Day Care Center located in your home at 7 Hiram Hill Road where only snacks are served." The commission's decision requires Iwaskiewicz to implement the proposed improvements and file "as-built" plans with the Monroe Health Department. Though the commission made no specific finding as to water and/or ground pollution, its finding that the health, safety, welfare, and property values in the neighborhood would not be detrimentally effected by the proposed use is supported by ample evidence that the proposed use will not create water and/or ground pollution. See Blakerv. Planning Zoning Commission, 219 Conn. 139, 147-48,592 A.2d 155 (1991); Feinson v. Conservation Commission,180 Conn. 421, 429 A.2d 910 (1980); Milardo v. Inland WelandsCommission, 27 Conn. App. 214, 605 A.2d 869 (1992).
2. Noise and Air Pollution
There is no evidence in the record specifically identifying potential sources of noise and air pollution. At its November 3, 1994 regular meeting, however, the commission discussed the impact that the proposed expansion would have upon the properties abutting that of Iwaskiewicz and found that a dense ceder [cedar] screen at the north of Iwaskiewicz' property, a similar dense screen at the rear of the property and a substantial wooded area to the south provided adequate screening. In addition, the commission conditioned approval of the expanded permit upon the construction a five foot tall, "solid wood or semi-solid woven fence" at the northern end of the proposed parking area. The video tape, contained in the record and viewed by the commission, constitutes sufficient CT Page 13900 evidence to support a finding that any noise or air pollution that might result from the proposed use is adequately mitigated by the buffers that exist between Iwaszkiewicz' property and her neighbor's. Therefore, there is substantial evidence in the record that noise and air pollution will have no detrimental effect on property values.
The plaintiffs have not identified any other reasons why the expansion of Iwaskiewicz' day care center would have a detrimental effect on property values. Moreover, the finding by the commission that the proposed expansion will be in harmony with and conform to the orderly development of the town and is totally compatible with the existing neighborhood is amply supported by the building plans submitted by Iwaskiewicz, Iwaskiewicz' testimony at the public hearing, the video tape, and the visits to the site made by certain commission members. Therefore, the commission's finding that the use proposed by Iwaskiewicz in her application will not have a detrimental effect on property values is supported by substantial evidence.
C. Inaccuracy of Maps and Plans
In its decision, the commission states that "the lot is of sufficient size and dimension to permit construction and the conduct of the use in such a manner to not be detrimental to the neighborhood. The commission observes a 10' error in the existing setback dimension to the northerly property line. By field check, a 51' setback exists; the 16' extension can still be accommodated without setback encroachment and still provide for reasonable use."[7] The plaintiffs argue that the commission's finding is not supported by the record because the plans the commission used were of "questionable integrity." The plaintiffs fail to mention that, at its November 3, 1994 meeting, the commission compared and correlated the plans submitted by Iwaskiewicz with "town mapping which [is] of A-2 survey quality." Moreover, the text of the commission's finding indicates that the commission verified compliance with the setback requirement by performing a field check. As the court already has held supra, the application, though not in technical compliance with every requirement, was in substantial compliance. The commission's finding that the size and dimensions of the lot will accommodate the expanded use is supported by substantial evidence. CT Page 13901
D. Off-street Parking
Finally, the plaintiffs argue that the commission's finding that Iwaskiewicz' plans provide for adequate off-street parking was not supported by the facts in the record. As discussed at length above, the court finds that the record demonstrates that Iwaskiewicz' plans provide for sufficient off-street parking in accordance with the zoning regulations.
The plaintiffs' appeal is dismissed.
Bruce L. Levin Judge of the Superior Court