[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I. STATEMENT OF THE CASE
The plaintiffs, Jonathan P. Van Dine and Sharon F. Van Dine, appeal a decision of the defendant, the Bolton planning and zoning commission, granting the application of defendants Mountaintop Enterprises, Inc. (Mountaintop) and Sprint Spectrum L.P. (Sprint) for a special permit for a wireless telecommunications tower at 130 Vernon Road, Bolton, Connecticut. The commission acted pursuant to General Statutes § 8-3c
and the Bolton zoning regulations in granting the application. The Van Dines appeal pursuant to General Statutes § 8-8.
 II. PROCEDURAL HISTORY
Pursuant to General Statutes § 8-3c (b), notice of the commission's decision approving the application for a special permit was published in the Hartford Courant on May 27, 1999. (Return of Record [ROR], Item C.) On September 23, 1999, the Van Dines filed their appeal. On October 25, 1999, the court, Zarella, J., granted the Van Dines' motion to add and cite in an additional defendant, Sprint, and to amend the complaint. On January 20, 2000, the court, Klaczak, J., denied the Van Dines' motion for permission to introduce additional evidence. The commission and CT Page 10378 Sprint filed answers to the complaint on April 17, 2000, and April 20, 2000, respectively, and Mountaintop submitted an answer to the complaint dated April 20, 2000.
 III. FACTUAL HISTORY
The record reveals the following. Mountaintop has been the owner of the subject property located at 130 Vernon Road in Bolton since January 30, 1979. (ROR, Item A.) The property currently houses a 280 foot guyed tower and a 125 foot guyed tower, each tower having 15 foot antennae affixed to the top. (ROR, Item D.) On April 20, 1999, Mountaintop and Sprint filed an application with the commission for a special permit for the replacement of the existing 125 foot guyed tower with a 150 foot guyed tower, which would include an antennae array located at the top of the structure and associated base station equipment at the bottom of the pole. (ROR, Items A, D.) The existing 125 foot tower would be dismantled to a height of 25 feet upon installation of the proposed facility. (ROR, Item D.) The applicants submitted that the aesthetic or visual impact of the site would not change because the proposed 150 foot tower would not be higher than the existing 125 foot tower due to the slightly lower elevation of the proposed site. (ROR, Items D, H.) Along with the application, Mountaintop and Sprint submitted site plans prepared by Goodkind O'Dea, Inc., consulting engineers and planners. (ROR, Item B.) The applicants also submitted a tower safety plan detailing their compliance with federal rules and regulations. (ROR, Item D.) On April 29, 1999, notice was published in the Hartford Courant that the commission would be holding a public hearing on May 12, 1999, regarding the application for the special permit. (ROR, Item C.)
On May 7, 1999, Mountaintop and Sprint submitted written testimony in support of the special permit application to the commission. (ROR, Item D.) Through the written testimony, the applicants generally explained the following. (ROR, Item D.) Sprint's personal communication services (PCS) system is composed of a grid of cells that cover specific geographic areas. (ROR, Item D.) In determining the ideal location of a cell site, Sprint undertakes a thorough engineering study, known as a propogation study. (ROR, Item D.) The propogation study evaluates cell boundaries based on topography and determines an optimal search area/ring" for a PCS site in order to provide maximum coverage in a particular cell. (ROR, Item D.) In order to have continuous coverage of the main arteries in Bolton, it is necessary for the telecommunications site to be located in a highly elevated area. (ROR, Item D.) It is Sprint's policy to place its antennae on existing structures such as rooftops, towers, water tanks and such other suitable structures. (ROR, Items D, H.) New structures for PCS facilities are constructed only when no other suitable existing structures are found within a cell in which Sprint must provide CT Page 10379 coverage. (ROR, Item D.)
Several potential sites in the Bolton area were identified, but, due to the topographical characteristics of the town, the options available for these potential sites were extremely limited. (ROR, Item D.) Conditions such as ground elevation and topographic changes made these sites unusable. (ROR, Item D.) Bolton's deep and narrow valleys, rolling hills, and deep road cuts of the roadways made it difficult for Sprint to identify properties other than that at 130 Vernon Road that serviced any significant areas in town. (ROR, Items D, H.) The site at 130 Vernon Road meets Sprint's required ground level elevation and permits Mountaintop to build a guyed tower PCS facility within the search area to meet the coverage objectives. (ROR, Item D.) The applicants explained that the Vernon Road site is a technologically feasible location for the Bolton cell because it meets the engineering requirements and the property is large enough to naturally buffer and screen the facility from virtually every surrounding property. (ROR, Item D.) John P. lanni, a professional soil scientist, conducted an on-site investigation of the site and concluded that there are no regulated wetlands or watercourses within 100 feet of the proposed site. (ROR, Items A, D.) In addition, the applicants explained that the Vernon Road property houses existing telecommunications facilities, and the purpose and intent of the regulations is to limit new telecommunications facilities. (ROR, Item D.) The applicants stated that the proposed facility at 130 Vernon Road would "assist wireless communications for emergency services, businesses and individuals in the Bolton area and . . . provide adequate service to emergency and other vehicles traveling along the main thoroughfares of Bolton, Route 6 and Route 44." (ROR, Item D.)
Included with the written testimony submitted to the commission by the applicants was a letter from Francis D. Kobylenski, P.E. (professional engineer) of Goodkind O'Dea, Inc., who discussed the options of either locating Sprint's antenna on the existing 280 foot guyed tower or modifying andlor replacing the existing 125 guyed foot tower to reach an elevation of 150 feet above grade. (ROR, Item D.) Kobylenski stated that after taking various information into consideration, it was concluded by Goodkind O'Dea, Inc., Sprint, Mountaintop and their electrical engineer, Charles S. Fitch, P.E., that the latter option was safer and more feasible. (ROR, Item D.) Also included with the written testimony was a letter by Mridul Chaturvedi, a radio frequency engineer from Sprint, who explained that a review of the search area for the Bolton cell found no existing buildings or water tanks of sufficient height to support Sprint's equipment, and no business or industrial zoned areas located within the search area for this cell. (ROR, Item D.) of the two existing towers located on Vernon Road, Chaturvedi explained that the shorter tower would not meet the coverage objectives for the cell because CT Page 10380 a tower of approximately 150 feet was needed in order to provide coverage to the desired area of Bolton. (ROR, Item D.) He further explained that a structural analysis of the taller tower indicates that it can not safely support Sprint's equipment. (ROR, Item D.) Therefore, Sprint proposed the construction of a new 150 foot guyed tower in the vicinity of the existing towers on Vernon Road. (ROR, Item D.) The applicants also submitted a letter from William B. Rettig, chief engineer of Pirod, Inc., which discusses tower design codes and practices as they relate to the tower designs of the proposed site. (ROR, Item D.)
On May 8, 1999, a second notice was published in the Hartford Courant, informing the public that the commission would be holding a public hearing on May 12, 1999, regarding the application for the special permit. (ROR, Item C.) Pursuant to General Statutes § 8-3c (b), the commission held the public hearing at the town hall on May 12, 1999, in which the commission and members of the public, including plaintiff Jonathan Van Dine, asked questions and voiced their concerns and opinions regarding the construction of a new tower at 130 Vernon Road. (ROR, Items F, H.) Residents of the area surrounding the proposed construction site also submitted photographs of their view of the current towers. (ROR, Item E.) Kobylenski and Margaret Rattigan, Mountaintop's attorney, were also in attendance and reviewed the site plan with the commission and members of the public, and answered questions. (ROR, Items F, H.) When asked if sites other than 130 Vernon Road had been considered, Attorney Rattigan stated that the Box Mountain Road site would not cover all of Route 44. (ROR, Items F, H.) In addition, Birch Mountain Road was too far removed from the service area to adequately cover the entire town and the existing antenna at TCI Cable was too low. (ROR, Items F, H.) The ridge south of Milton Hathaway's property, near the state park, was not considered. (ROR, Items F, H.)
At the commission's regular meeting held on May 19, 1999, commission member Mark Johnson stated that he found nothing within the application for the special permit that did not comply with the regulations. (ROR, Item F.) The commission unanimously approved the application for the special permit for the wireless telecommunications tower with the condition that, according to the plan, the existing 125 foot tower be decreased to a 25 foot stub tower and any future changes to the stub tower must be in accordance with the regulations existing at the time. (ROR, Items F, G.)
 IV. JURISDICTION
A. Aggrievement
General Statutes § 8-8 (b) provides in relevant part that "any CT Page 10381 person aggrieved by any decision of a board may take an appeal to the superior court for the judicial district in which the municipality is located." General Statutes § 8-8 (a)(1) provides that: ""Aggrieved person' means a person aggrieved by a decision of a board and includes any officer, department, board or bureau of the municipality charged with enforcement of any order, requirement or decision of the board. In the case of a decision by a zoning commission, planning commission, combined planning and zoning commission or zoning board of appeals, "aggrieved person' includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board."
In the present case, the Van Dines are aggrieved persons because they have alleged that they own property within 100 feet of 130 Vernon Road, the site where the commission approved the application for the special permit for the telecommunications tower. The Van Dines allege that they live at 91 Vernon Road, directly across from the subject property. (Plaintiffs' Brief.) In addition, the Van Dines have submitted a certified copy of the deed to their property filed in the Bolton land records. (Plaintiffs' Exhibit B.)
B. Timeliness of the Appeal and Service of Process
General Statutes § 8-8 (b) provides that an "appeal shall be commenced by service of process . . . within fifteen days from the date that notice of the decision was published as required by the general statutes." Notice of the decision approving the special permit application was published on May 27, 1999. (ROR, Item C.) Pursuant to General Statutes § 8-8 (b) and (e), a sheriff served the commission by leaving appeal papers at the usual place of abode of Loren Otter, chairperson of the commission, on June 9, 1999, and in the hands of Nancy Soma, assistant town clerk of the town of Bolton, on June 10, 1999. (Sheriff's Return.) Pursuant to § 8-8 (b) and (f), the sheriff served Mountaintop by leaving appeal papers in the hands of Attorney Charles C. Greenwald, an agent for service for Mountaintop, on June 10, 1999. (Sheriffs Return.) On October 25, 1999, the court, Zarella, J., ordered that Sprint be summoned to appear as a defendant in this action. On November 22, 1999, Sprint waived service of the summons, and its attorney, Jonathan J. Kane, accepted service on Sprint's behalf. Accordingly, this appeal was timely served on the proper parties.
 V. STANDARD OF REVIEW
"A special permit allows a property owner to use his property in a manner expressly permitted by the local zoning regulations. . . . The proposed use, however, must satisfy standards set forth in the zoning CT Page 10382 regulations themselves as well as the conditions necessary to protect the public health, safety, convenience, and property values." (Internal quotation marks omitted.) Raczkowski v. Zoning Commission,53 Conn. App. 636, 639, 733 A.2d 862, cert. denied,250 Conn. 921, 738 A.2d 658 (1999); Housatonic Terminal Corp. v. Planning Zoning Board, 168 Conn. 304, 307,362 A.2d 1375 (1975).
"When ruling upon an application for a special permit, a planning and zoning board acts in an administrative capacity." (Internal quotation marks omitted.) Irwin v. Planning Zoning Commission, 244 Conn. 619,627, 711 A.2d 675 (1998). "Acting in this administrative capacity, the [zoning commission's] function is to determine whether the applicant's proposed use is expressly permitted under the regulations, and whether the standards set forth in the regulations and the statute are satisfied. . . . Moreover, [i]t is well settled that in granting a special permit, an applicant must satisf[y] all conditions imposed by the regulations. . . . The zoning commission has no discretion to deny the special exception if the regulations and statutes are satisfied." (Brackets in original; citation omitted; internal quotation marks omitted.) Raczkowski v. ZoningCommission, supra, 53 Conn. App. 639-40; see also Housatonic TerminalCoru. v. Planning Zoning Board, supra, 168 Conn. 307.
"The commission enjoys reasonable discretion in construing the regulations that it is charged with enforcing." Michel v. Planning Zoning Commission, 28 Conn. App. 314, 323, 612 A.2d 778, cert. denied,223 Conn. 923, 614 A.2d 824 (1992). "The regulations must be construed as a whole and in such a way as to reconcile all their provisions as far as possible . . . [R]egulations are to be construed as a whole since particular words or sections of the regulations, considered separately, may be lacking in precision of meaning to afford a standard sufficient to sustain them." (Brackets in original; citation omitted; internal quotation marks omitted.) CRRA v. Planning Zoning Commission,46 Conn. App. 566, 571, 700 A.2d 67, cert. denied, 243 Conn. 935,702 A.2d 640 (1997).
"On appeal, a reviewing court reviews the record of the administrative proceedings to determine whether the commission . . . has acted fairly or with proper motives or upon valid reasons." (Internal quotation marks omitted.) Schwartz v. Planning Zoning Commission, 208 Conn. 146, 152,543 A.2d 1339 (1988). "Review of zoning commission decisions by the Superior Court is limited to a determination of whether the commission acted arbitrarily, illegally or unreasonably." (Internal quotation marks omitted.) Raczkowski v. Zoning Commission, supra, 53 Conn. App. 639. "[I]t is not the function of the court to retry the case. Conclusions reached by the commission must be upheld by the trial court if they are reasonably supported by the record. The credibility of the witnesses and CT Page 10383 the determination of issues of fact are matters solely within the province of the agency. The question is not whether the trial court would have reached the same conclusion but whether the record before the agency supports the decision reached." (Internal quotation marks omitted.)Protect Hamden/North Haven from Excessive Traffic Pollution, Inc. v.Planning Zoning Commission, 220 Conn. 527, 542-43, 600 A.2d 757
(1991). "The plaintiffs bear the burden of proving that the commission acted unreasonably, arbitrarily or illegally." Michel v. Planning Zoning Commission, supra, 28 Conn. App. 323.
"In appeals from administrative zoning decisions, the commission's conclusions will be invalidated only if they are not supported by substantial evidence in the record." (Internal quotation marks omitted.)Raczkowski v. Zoning Commission, supra, 53 Conn. App. 639. "In situations in which the zoning commission . . . [states] the reasons for its action, the question for the court to pass on is simply whether the reasons assigned are reasonably supported by the record and whether they are pertinent to the considerations which the commission is required to apply under the zoning regulations. . . . The agency's decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given." (Citations omitted; internal quotation marks omitted.) Irwin v. Planning Zoning Commission, supra,244 Conn. 629. If the commission does not, however, formally state a reason for its decision, the court is required to "search the entire record to find a basis for the commission s decision." (Internal quotation marks omitted.) Protect Hamden/North Haven from ExcessiveTraffic Pollution. Inc. v. Planning Zoning Commission, supra,220 Conn. 544.
 VI. DISCUSSION
The commission unanimously approved the application for the special permit for the wireless telecommunications tower at 130 Vernon Road in Bolton. (ROR, Items F, G.) The Van Dines appeal on the grounds that the commission acted illegally, arbitrarily and in abuse of its discretion because: a) it's decision was contrary to, and not supported by the testimony and evidence presented to it at the public hearing; b) it failed to meet the requirements of the zoning regulations with regard to granting a special permit for a wireless telecommunications tower; and c) it's decision was based on information that was inaccurate. The Van Dines argue that the commission approved the special permit application, which involved a priority six location, the lowest priority, without making a finding as required by § 17H of the regulations, which dictates that the commission make a finding to justify a decision approving a telecommunications facility that is not within priorities one through three, as established by § 17C.[1]
CT Page 10384
The Van Dines further argue that § 17H.2 mandates that if an application does not involve priorities one through three as set forth in § 17C, the applicant must include an evaluation by a Connecticut licensed engineer in the field of telecommunications broadcasting on whether the planned equipment cannot be accommodated on an existing or approved tower due to structural deficiencies and whether such deficiencies cannot be eliminated at a reasonable cost. The Van Dines contend that the applicants provided no information, proof or substantiation that engineers Kobylenski or Chaturvedi are licensed in Connecticut, that they practice in the field of telecommunications broadcasting or that they have any actual experience in that field.
Finally, the Van Dines argue that the commission approved the application without requiring the applicants, pursuant to § 17H, to adequately describe the efforts and measures taken by them to provide an application which utilizes a priority higher than priority six and to provide an adequate explanation as to why a higher priority location was not technologically, legally or economically feasible: The Van Dines maintain that the two ways that the applicants attempted to satisfy this requirement, the written testimony and testimony at the public hearing, were inadequate. The Van Dines contend that notice was first published on April 29, 1999, advising members of the public that the application had been filed and was available for review by the public at the town hall, and that there would be a public hearing on May 12, 1999. The Van Dines argue that the written testimony was inadequate because it was not submitted until May 7, 1999. They contend that if members of the public sought to review the documents at the town hall on or after April 29, 1999, but before May 7, 1999, they would not know of the presence of the written testimony, nor have the opportunity to review the testimony in preparation for the public hearing. The Van Dines conclude that to consider such testimony as part of the record denies the public a fair public hearing. The Van Dines further maintain that the testimony offered at the public hearing on May 12, 1999, was inadequate because the applicants' answers were unsatisfactory with respect to locations other than 130 Vernon Road for a telecommunications facility, and the written testimony was not sufficiently discussed at the hearing.
Sprint, Mountaintop and the commission argue that the appeal should be denied because the commission properly approved the application for the special permit under the General Statutes and the regulations. Sprint argues that § 17H of the regulations requires that the applicant, not the commission, adequately describe and explain why the telecommunications site is not a preference one through three site, and the record reflects that the applicants satisfied this requirement; the record reflects that Kobylenski is a professional engineer licensed in CT Page 10385 the state of Connecticut, Chaturvedi is a radio frequency engineer involved in the telecommunications field and Rettig is a professional engineer licensed in Connecticut; and the notice published on April 29, 1999, informed the public that the application and site plans were on file with the commission, but the written testimony, although part of the record, was not part of the application or site plans, yet it was referenced at the public hearing and readily available to the public at that time.
Mountaintop argues that at the May 19, 1999 meeting, the commission's finding that there is "nothing within the application that does not comply with the zoning regulations, " was summarized as a statement in the minutes because the meeting was not recorded. Furthermore, Mountaintop argues that the applicants provided adequate explanations as to why a higher preference was not used through Kobylenski, a Connecticut licensed engineer who has experience in the field of telecommunications, and Chaturvedi, a radio frequency engineer.
The commission argues that neither the regulations nor established zoning law require it to make an express "finding" on the record to approve a site and a "finding" is implicit in the commission's approval of the application. The commission further argues that the credibility and qualifications of the witnesses, who are Connecticut licensed engineers experienced and/or familiar in the field of telecommunications broadcasting, is within the province of the commission and there is nothing to indicate that the commission's reliance on the submissions by the experts was illegal, arbitrary or an abuse of discretion. The commission contends that it properly relied on the written submissions and testimony at the public hearing in concluding that higher priority sites were not feasible because the written material was on file before the second notice was published in the Hartford Courant on May 8, 1999, providing the public with the opportunity to review the material before the public hearing. Furthermore, the commission argues that members of the public did not complain at the public hearing that they were prejudiced by the submission of materials on May 7, 1999, 50 the commission was deprived of an opportunity to remedy the situation at that time.
Section 17H of the regulations provides in relevant part: "In order to approve applications for wireless telecommunication sites, the Commission must find: In the case where an application for the proposed location of a wireless telecommunication site is not a preference 1 through 3 location in Section 17C, the applicant has adequately described the efforts and measures taken to pursue those preferences and has provided an adequate explanation as to why a higher preference location was not technologically, legally or economically feasible. The documentation CT Page 10386 supplied by the applicant should include an evaluation of the following factors: . . . 2. Whether the planned equipment cannot be accommodated on existing or approved towers due to structural deficiencies and whether such deficiencies cannot be eliminated at a reasonable cost, as documented by a Connecticut licensed engineer in the field of telecommunications broadcasting. . . . ."
The court is not persuaded by the Van Dines' argument that the commission failed to make a finding pursuant to § 17H. The record reveals that commission member Johnson stated at the commission's regular meeting on May 19, 1999, that he "finds nothing within the application that does not comply with the zoning regulations." (ROR, Item F.) Thereafter, the commission unanimously approved the special permit application. (ROR, Item F.) "It was not necessary for the [commission] to make [a] finding in the exact language of the regulations." Malafrontev. Planning Zoning Board, 155 Conn. 205, 213, 230 A.2d 606 (1967). "Courts must be scrupulous not to hamper the legitimate activities of civic administrative boards by indulging in a microscopic search for technical infirmities in their actions." (Internal quotation marks omitted.) Samperi v. Inland Wetlands Agency, 226 Conn. 579, 596,628 A.2d 1286 (1993). Moreover, the commission's decision to approve the special permit application constituted an implicit finding that the applicants adequately described the efforts and measures taken to pursue a preference one through three location and that the applicants provided an adequate explanation as to why a higher preference was not technologically, legally or economically feasible. See Samperi v. InlandWetlands Agency, supra, 596.
Even if § 17H required the commission to make an explicit finding on the record in the exact language of the regulations and the commission failed to do so, the Supreme Court has held that "an agency is not required to state all its determinations on the record so long as the record provides an adequate basis for the agency's decision." Samperi v.Inland Wetlands Agency, supra, 226 Conn. 590-91. The court finds that the commission's granting of the special permit application is adequately supported by the record and is in compliance with § 17H, notwithstanding that the commission did not expressly make "findings" as to each location on the site preference list of § 17C. The applicants submitted written testimony which adequately described Sprint's policy to place antennae on existing structures and the difficulty with finding sites in Bolton due to factors such as topography. (ROR, Item D.) The record reflects that other sites were considered, but such sites were unable to provide the necessary coverage throughout the main arteries of Bolton. (ROR, Items D, F, H.) The record further reflects that the applicants adequately explained that the Vernon Road site was best suited to satisfy Sprint's coverage needs. (ROR, Items D, F and H.) In addition CT Page 10387 to the written testimony, the applicants, including their engineers, testified at the public hearing as to the aforementioned. (ROR, Items F, H.)
Furthermore, pursuant to § 17H.2, the applicants submitted letters from engineers Kobylenski and Chaturvedi, which reveal that the proposed equipment could not be accommodated on sites other than the Vernon Road site. (ROR, Item D.) The court is also unpersuaded by the Van Dines' argument that there is no information, proof or substantiation in the record that Kobylenski and Chaturvedi are Connecticut licensed engineers experienced in the field of telecommunications broadcasting. The record reflects that Kobylenski is a professional engineer employed with Goodkind O'Dea, Inc., consulting engineers and planners, of New Haven, Connecticut. (ROR, Item D.) The record also reflects that Chaturvedi is a radio frequency engineer employed with Sprint's engineering and operations department in Wallingford, Connecticut. (ROR, Item D.) In addition to the letter explaining why the Vernon Road site was the most suitable option, Chaturvedi submitted results of power density calculations for the towers at the Vernon Road site and results of detail calculations of various transmitting systems. (ROR, Item D.) The commission's reliance on the evidence submitted by Kobylenski and Chaturvedi was not unreasonable, arbitrary, illegal or in abuse of its discretion. "The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the agency." (Internal quotation marks omitted.) Protect Hamden/North Haven fromExcessive Traffic Pollution. Inc. v. Planning Zoning Commission, supra, 220 Conn. 543.
Finally, the court is not persuaded by the Van Dines' final argument that the written testimony and the testimony at the public hearing provided inadequate explanations as to the applicants' efforts to utilize a higher preference location and why a higher preference location was not technologically, legally or economically feasible. The record reflects that the written testimony was available for the public's review on May 7, 1999, before the second notice was published in the Hartford Courant on May 8, 1999, and in advance of the public hearing on May 12, 1999. (ROR, Items C, D, F.) The commission did not act illegally, arbitrarily or in abuse of its discretion by taking into consideration the written testimony. Furthermore, the testimony at the public hearing was adequate in that the written testimony was explained and explanations were provided as to why other sites were not suitable for the proposed telecommunications tower. (ROR, Items F, H.)
 VII. CONCLUSION
Because the commission's decision was substantially supported by the CT Page 10388 record and was not unreasonable, arbitrary, illegal or an abuse of discretion, the Van Dines' appeal is hereby dismissed.
Klaczak, J.