[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
After notice and hearing, the Monroe Planning and Zoning Commission (hereinafter "Commission') granted an application for a change of zone of a four acre parcel at 133 Main Street (Route 25) in the Town of Monroe from RC (residential and farming district) and DB1 (Design Business #1) to DB #2 (Design Business #2) and further granted a special exception so as to permit the construction of a fast food drive up restaurant. The Monroe zoning regulations permit restaurants that do not offer take out services through a drive up window in the DB1 zone but do permit drive up restaurants in a DB2 zone.
The four acre parcel which is the subject of this appeal is bounded on the north by the DB2 zone, on the east by Main Street and the DB2 zone, CT Page 3387 on the south by the RC and RD (residential and farming district D) zones and on the west by the RD zone. of the four acres involved, 2.7 acres were changed from DB1 to DB2 and 1.3 acres were changed from RD1 to DB2. The 1.3 acre piece consists of a strip of land which runs along the rear of the remainder of the four acres and parallel to Route 25. At the northerly boundary is located a gas station/mini mart and directly across Route 25 is a Duchess fast food drive up restaurant which the plaintiff owns.
The plaintiff is aggrieved because at all times pertinent to this appeal the plaintiff has been the fee simple owner of real property directly across the street from and within 100 feet of the subject premises. Section 8-8 (1); Goldfeld v. Planning and Zoning Commission,3 Conn. App. 72 (1986).
The plaintiff's appeal alleges that the commission acted illegally in twenty three different ways. In its brief, however, the plaintiff has reduced the number of challenges to thirteen. The other ten claims are deemed to have been abandoned. Brunswick v. Inland Wetlands Commission,29 Conn. App. 634, 638 (1992). Each claim will be considered in order.
I. Spot Zoning.
"Our courts consistently have invalidated zoning decisions that have constituted spot zoning." [S]pot zoning is the reclassification of a small area of land in such a manner as to disturb the tenor of the surrounding neighborhood.' Morningside Assn v. Planning and ZoningBoard, 162 Conn. 154, 161. Two elements must be satisfied before spot zoning can be said to exist. First, the zone change must concern a small area of land. Second, the change must be out of harmony with the comprehensive plan for zoning adopted to serve the needs of the community as a whole. Id. The comprehensive plan is to be found in the scheme of the zoning regulations themselves. First Hartford Realty Corp. v. Planand Zoning Commission, 165 Conn. 533, 542 (1973). Blaker v. Planning andZoning Commission, 212 Conn. 471, 483 (1989)." (alternate citations omitted).
A review of the minutes of the commission's March 26, 1998 meeting discloses that the vote to approve the application was based in part upon the following findings:
 The commission finds that the change of zone is consistent with existing zoning. As the subject property is already zoned for business, as well as are adjacent properties; other existing DB-2 zoning is also adjacent. The change of zone, as modified, CT Page 3388 represents no significant expansion of the business zone.
 The commission finds that the special exception permit is consistent with the recommendations of the Monroe plan of development and the orderly development of the town, and is consistent with the existing zoning of the subject land.
 The commission finds that the design of the site shall not create an unwarranted intrusion into the residential zone as the property is already zoned for business use, and also based upon proximity of the site to major roads and already existing business uses and business zoned properties: it is consistent with the long existing character of the established commercial corridor.
The plaintiff relies heavily on certain passages from the Monroe Plan of Development. It quotes a section that proposes that land in the Route 25 corridor be rezoned for affordable housing as if the commission intended this to be the exclusive future use for the area. In fact, at page II-2 of the Plan the commission states that "the existing commercial zone in the Route 25 corridor shall have limited expansion." Random use of zone changes shall be discouraged and the use of existing commerciallyzoned lands shall be encouraged." (Emphasis added).
The zone change is consistent with this provision because expansion of the business zone by widening the strip commercial zone along Route 25 in order to accommodate a permitted use constitutes a "limited expansion." Also, the addition of the former RD zoned land facilitates the use of existing commercially zoned land. Nor may the zone change be characterized as "random" because it was specifically designed to allow land already zoned commercial to be fully and appropriately devoted to the purpose by adding needed land area.
In fact, annexation of the strip of RD zoned land to the BD2 zone is logical and reasonable because it serves to straighten the zone boundary line, to even it off and make it consistent in depth with neighboring properties whose BD2 boundary line, is deeper than the subject property.
It is also noted at page II-9 of the Plan of Development that:
 The two designated commercial zones in Monroe are Design Business (DB)1 and 2. The total acreage designated commercial is approximately 380 acres of CT Page 3389 which 90 are still vacant. Most of the vacant commercial land is constituted as small individual lots along the major north-south arterials. Routes 25 and 111. Current zoning allows for limited expansion of commercial areas. The configuration of existing property lines as they relate to zoning lines does not permit any new major commercial growth.
The commercially zoned land in this case is part of the 90 vacant acres which does not contemplate new commercial growth. This use is therefore the type of use contemplated by the plan of development. Moreover, the plaintiff misunderstands the nature of the Monroe comprehensive plan. Such a plan is found in the scheme of the zoning regulations themselves and in the zoning map. Burnham v. Planning and Zoning Commission, 189 Conn. 261,267 (1983). The plan of development which the plaintiff quotes is advisory only and is not binding on the commission when it acts in its legislative capacity. Lebanon v. Woods, 153 Conn. 182. 193 (1995). It is not the comprehensive plan for zoning in Monroe.
As the plaintiff did in Michel v. Planning and Zoning Commission,28 Conn. App. 314, 320 (1992) the plaintiff in this case argues that the difference between a restaurant with drive up window and a restaurant without such a window was recognized and preserved by the commission in 1989 when the subject property was placed in RD1 zone and not the RD-2 zone and to obliterate this difference violates the comprehensive plan. The Appellate Court's response to a similar argument made in Michel is applicable here. The court stated: "Here, the commission rezoned the subject parcel from one variety of design district to another. The practical effect of the change in zone was simply to permit a McDonald's restaurant with a drive thru window in lieu of a McDonald's restaurant without a drive thru window. The commission did not engage in spot zoning when it granted McDonald's application for a change of zone because it reasonably concluded that this incremental change in the permitted use of the property was not repugnant to Monroe's comprehensive plan." Id. at 320.
The commission's determination that the change comports with the town's comprehensive plan must be given substantial deference. Dooley v. TownPlanning and Zoning Commission, 154 Conn. 470. 478 (1967). The change in the zone classification from BD1 to BD2 and from RD to B2 does not constitute spot zoning.
II. Approval Conditioned Upon Action by Another Governmental Agency.
The plaintiff argues that in articulating its reasons. the commission conditioned its approval on the making of certain unspecified CT Page 3390 improvements to Route 25 by the State Department of Transportation. In support of that claim the plaintiff cites reason #8 which reads as follows:
 In consideration of traffic improvements to be made to the site and Route 25, as submitted both by application and by testimony at the public hearing, the commission finds that the streets serving the proposed use are substantially adequate to carry prospective traffic and provision has been made for entering and leaving the property in such a manner that no significant traffic hazards will be created and adequate off street parking and loading facilities are provided. Additionally improvements to the adjacent roads and rights of way shall serve to improve traffic flow and general traffic conditions over those which exist and will generally upgrade traffic movement through the adjacent intersections.
The plaintiff's statement of the law as found in such cases as JarvisAcres, Inc. v. Zoning Commission, 163 Conn. 41 (1972) and Faubel v.Zoning Commission, 154 Conn. 202. 211 (1966) is essentially correct but misplaced. The doctrine embodied in these cases applies to situations where the public improvement called for depended for its approval and implementation on action of a govern mental agency over which the zoning authority had no control. In this case, the traffic and road improvements referred to by the commission are those which the applicant itself proposed to make as an integral part of its construction plan. and therefore fall under the control of the commission which can enforce its own conditions and in particular condition #2 and 3 which mandate completion of the improvements as a precondition to issuance of a certificate of occupancy.
The only evidence lacking in the record on this point is whether it is reasonably probable that the State DOT will approve the proposed improvements. Under Blaker v. Planning and Zoning Commission, supra at 483. no such evidence is necessary, and the fact that state approval as opposed to municipal approval is necessary makes no difference. Styles v.Town Council, 159 Conn. 212 (1970). In fact, the transcript at page 7 reveals that the State has already approved the applicant's proposal to take the street improvements all the way down the frontage of the property. Lastly, it is only logical for the commission to have made the first move in indicating the conditions under which it would approve the issuance of a certificate of occupancy and this is so even though the project may subsequently fail to materialize because one or more of the conditions has for any reason not been met. Lurie v. Planning and ZoningCT Page 3391Commission, 160 Conn. 295. 307 (1971).
III. Signatures of Owners.
The defendant claims that because certain signatories to the application did not sign in their representative capacities presumably as executor or administrator of decedent estates but only signed in their individual capacities, the application was invalid and therefore the commission had no jurisdiction to act.[1] Initially, the court notes that nowhere in the record does it appear that any of the property is owned by the decedent estates. Moreover, even if this were the case, it is long settled law that real property which is owned by a decedent's estate is not owned by the personal representative anyway but is owned by the heirs at law or the next of kin. 2 Locke and Kohn, Connecticut Probate Practice 46.
As was the case in Michel v. Monroe Planning and Zoning Commission, supra at 325 the owners consented to the filing of the application and nothing more was needed to place the application properly before the commission.
IV. Interest of J.K. Builders, Inc.
The plaintiff argues that § 117-900(A) of the Monroe zoning regulations requires that "the existing use of land shall not be changed until a site plan of development shall have been prepared by the owner ofsuch land", and because the applicant was not the "owner", he had no standing to prepare and file the site plan. Such an argument advances form over substance especially when the owners signed the application to which the site plan related. supra. III. Moreover, the filed Uniform Land Use Application states that J.K. Builders, Inc. was the contract purchaser of the property. Nothing in the record refutes that statement. It has long been held that a contract purchaser has a sufficient interest to qualify as an owner for purposes of aggrievement, Primerica v.Planning and Zoning Commission, 211 Conn. 85, 92-95 (1989). The rule should be no different when the term "owner" is used as a qualification for status as an applicant.
V. Publication of Notice of Approval of Site Plan.
The plaintiff's attack here draws into question the precise relationship of the site plan to the special exception. The plaintiff argues that commission review of each constitutes a separate and distinct function and therefore the exercise of each function requires a separate legal notice. Whether a site plan review is distinct and separable from a special exception review has been most recently discussed by our Supreme CT Page 3392 Court in Center Shops of East Granby, Inc. v. Planning and ZoningCommission, 253 Conn. 183 (2000). In the context of automatic or inferred approval of a site plan which accompanied an application for a special exception the court held that under certain conditions a site plan may be deemed to be an integral part of and inseparable from a special permit. Plaintiff, as well as the defendant, have failed to provide any analysis of whether this case satisfies these conditions, or indeed, whether the principles expounded by the court in that case are even applicable here. A reading of § 117-901 which governs the contents of a site plan of development shows that the plan is required to show all of the "improvements" proposed for the site. Consistent with that requirement. an examination of the legal notice of approval discloses that the commission in fact gave notice of its approval of "associated site improvements." These improvements were of course shown on the site plan of development which had been filed by the commission. The commission was not required in the legal notice to use the term "site plan of development" as used in the regulations.
"`The right of appeal. if it is to have any value, must necessarily contemplate that the person who is to exercise the right be given the opportunity of knowing that there is a decision to appeal from and of forming an opinion as to whether that decision presents an appealable issue. Until the prospective appellant has either actual or constructive notice that a decision has been reached, the right of appeal is meaningless'." Hubbard v. Planning Commission, 151 Conn. 269, 271-272
(1963). The adequacy of the notice with regard to the opportunity granted the plaintiff "`of forming an opinion as to whether that decision presents an appealable issue' must be determined from the notice construed as a whole, including to its references to the prior notice of hearing."Bridgeport Bowl-o-Rama v. Zoning Board of Appeals, 195 Conn. 276, 282
(1985).
In this case, the pre hearing notice was identical to the post hearing notice in this respect. It is noted that the plaintiff has made no attack upon the pre hearing notice. It is therefore bound by the adequacy of its contents. Id. at 282. The notice is legally adequate.
VI. The Conditions of the Special Exception.
The plaintiff attacks condition #20 of the commission's decision which provides as follows:
 "Construction shall commence no later than eighteen months from the date of decision: September 26. 1999: it shall be complete no later that three (3) years from date decision: March 26. 2001." CT Page 3393
 Specifically. the plaintiff claims that this provision conflicts with and therefore violates § 117-900 (c) of the Monroe zoning regulations which provides as follows:
 Such approved plan shall become null and void unless construction of building is in progress and not less than fifty percent (50%) of building foundations shown on the approved site plan of development are completed within one (1) year of the date of approval of such plan. unless an extension of time is granted by the commission.
The very same argument was made by the plaintiff in the Michel case, supra. The court's analysis of the claim in that case applies with equal force here. "The plaintiffs correctly assert that the commission cannot attach a condition that conflicts with the applicable zoning regulations to its approval of a special exception permit. "`[T]he conditions under which a special [permit] is allowed must be found in the regulations and cannot be altered; and if a condition is imposed by a commission without being warranted by' the regulations, it is void' Beckish v. Planning andZoning Commission, 162 Conn. 11, 15 (1971)." Hochberg v. ZoningCommission, 24 Conn. 526, 529 (1991). The condition attacked by the plaintiffs does not, however, conflict with § 117-900(C) of the Monroe zoning regulations. Section 117-900(C) expressly provides that the commission may extend the time period within which 50% of the building's foundation must be completed. The condition that construction of the building need commence only within one year merely extended the dead line for completing the foundation. As such, the condition did not conflict with the applicable zoning regulations." Michel v. Planning andZoning Commission, supra at 327. Likewise in this case, the commission had broad authority to extend the deadline from one year to eighteen months.
VII. Separate Vote.
The record clearly indicates that the commission took a single vote on both the application for change of zone and the special exception. The plaintiff challenges the procedural validity of such a vote, relying onNorris v. Planning and Zoning Commission, 156 Conn. 592, 596 (1968). InNorris the applicant filed two separate applications, one for a zone change and the other for a special permit. The commission granted both and on its own initiative, the commission after notice and hearing, amended the town's master plan. In approving of a single hearing on all three proposals the court stated that "[t]he important thing is that CT Page 3394 although the commission heard all these proposals at a single hearing, when it came to act upon them, it clearly acted separately and distinctly and for specific and relevant reasons on each of the proposals".
The court finds it significant that the court failed to state the consequences for the failure to act separately as described. This court believes that the reason for this is that the court elsewhere stated that the plaintiff must show how the irregularity in this procedure prejudiced it. Id. at 596. In this case, while the commission adopted but a single resolution it is readily apparent from its comprehensive language that it gave appropriate consideration to the various factors which it was required to consider under § 8-2 of General Statutes with respect to the zone change and § 117-1800 and 1801 of the Monroe zoning regulations with respect to the special exception. Each of the reasons was relevant to the particular action which the commission took. Furthermore, the factors which the commission considered are amply supported by the evidence in the record. There is no talismanic requirement that a resolution of approval be drafted in such language that it clearly separates those considerations which relate to a zone change from those which relate to a special exception as long as the consolidated resolution addresses and the record reflects that proper attention was given to each.
VIII. Monroe Town Plan
The issues raised on this subject have been addressed in part I of this opinion. No further explication is necessary.
IX. Evidence of Need
The commission is attacked here because there is no specific evidence in the record of need for the facility. Finding #7 made by the commission reads as follows:
 The commission finds that the proposal is necessary for the welfare and convenience of the townspeople and will provide for the growth of appropriate business and retail establishments in town. The use provided will fill a significant need in the community and will be a desirable addition to the town of Monroe both in terms of goods and services to the community and as a reasonable addition to the tax structure.
Such a statement by a zoning authority clearly reflects the authority's overall knowledge of the welfare and convenience of the community and does not comport to make a finding of need in the technical sense. There CT Page 3395 is nothing in the regulations that require that. In fact, need has been deemed to be synonymous with necessity which has been defined to mean public convenience. Kenneson v. Bridgeport, 130 Conn. 298. 300-301 (1943).
Moreover, the contrary is true. The town planner, Mr. Daniel Tuba opined to the commission in a letter dated October 24, 1997 that "in consideration of adjacent uses (existing and proposed), the character of the area and neighborhood and their uses, natural constraints and inhibitions and the prospect of the use of the site for a variety of uses including residential, it is my opinion that the rezoning, has proposed, is both a logical and reasonable exercise and can be considered as consistent with the plan of development."
The commission clearly acted in anticipation of future developments including residential. There is no merit to this contention.
X. Detrimental to Public Welfare
This allegation comes down to a claim of increased traffic and the need for street improvement. Section 117-1801 A (2) of the Monroe zoning regulations provides that a special exception permit must meet the condition that "[t]he streets serving the proposed use are adequate to carry prospective traffic, and provision is made for entering and leaving the property in such a manner that no traffic hazards will be created and adequate off-street parking and loading facilities are provided." There is nothing in the record to support the claim that the proposed use would be detrimental to the neighborhood, or the public welfare. There is no evidence that it will produce a traffic hazard or cause congestion in the streets. First Hartford Realty Corporation v. Planning and ZoningCommission, 165 Conn. 533, 543 (1973). On the contrary, Mr. Tuba's letter of October 24, 1997 states that "site lines are excellent in both directions and the proximity of the traffic light at Purdy Hill and Judd Road should provide ample gaps in traffic to accommodate turning movements." He also noted that "because of the proximity of the traffic light, conflicts between the subject driveway and the Duchess Drive-In location should be minimal."
XI. Vagueness of Conditions
There is nothing vague about a condition which requires that the site plan of development include and comply with all of the requirements of the various municipal departments which have review jurisdiction over the project, such as fire, police, health, wetlands etc. These requirements are specifically expressed in the record. Such a condition satisfies § 117-1801. CT Page 3396
XII. Queue Space.
The plaintiff argues that because the architectural plan shows two windows as "drive up service" each window requires eight queue spaces in accordance with § 117-2403 of the zoning regulations. The town planner and ultimately the commission have determined that even though the architectural elevation shows two windows, in fact functionally, there is only a single service window. Such an interpretation of the regulations is the only sensible one. Section 117-2403 clearly contemplates windows offering separate service, as in different parts of the building. Thus, the regulation contemplates a separate queue line at each window. As the two windows are located on the plan it would be impossible to have a separate queue for each window. The commission enjoys reasonable discretion in construing the regulations that it is charged with enforcing. Spero v. Zoning Board of Appeals, 217 Conn. 435, 440 (1991). The only way to read the elevation is that one window is for ordering and the other is for pick up. The plaintiff has failed to show that the commission has acted unreasonably, illegally. arbitrarily or in abuse of its discretion.
XIII Encroachment of Queues on Spaces and Aisles.
There is no evidence in the record to support the assertion that the queue lines or the traffic flow on site will interfere with or encroach upon any required parking space. At oral argument the plaintiff failed to demonstrate that this claim was based on anything more than speculation.
The court has reviewed the action of the commission in accordance with the guidelines and standards set forth in Protect Hamden/New Haven fromExcessive Traffic and Pollution, Inc. v. Planning and Zoning Commission,220 Conn. 527. 543-545 (1991 and Felsman v. Zoning Commission,31 Conn. App. 674. 678 (1993) and concludes that the plaintiff has failed to sustain its burden of proof that the commission has acted illegally, arbitrarily or in abuse of its discretion.
Accordingly, the appeal is dismissed.
BY THE COURT.
Mottolese, Judge